# STATE OF MICHIGAN

# COURT OF APPEALS

BERNARD E. FISHER and LINDA J. FISHER,

Plaintiffs-Appellees,

v

ALLEN SLATER,

Defendant-Appellant.

UNPUBLISHED
June 16, 2016

No. 326432
Midland Circuit Court
LC No. 13-009758-CH

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's judgment, following a bench trial, quieting title in favor of plaintiffs to a disputed strip of land under the doctrine of acquiescence. For the reasons stated below, we reverse and remand for dismissal of plaintiffs' acquiescence claim.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs and defendant own neighboring parcels of land, with plaintiffs' parcel situated north of defendant's parcel. Plaintiffs purchased their parcel in 1991, and defendant acquired his in 2010. After a few months, plaintiffs began to complain that defendant was encroaching upon their property. In response, defendant hired a surveyor in 2013 to establish his parcel's boundary lines. The surveyor found that defendant's northern property line was the east-west quarter line of section 9 in Lincoln Township. He also found that a survey conducted in 1992 (referred to by the trial court as "the Ayres survey" after the company that performed it), which was incorporated into defendant's deed, erroneously located the boundary line between the parcels. His survey showed that the 1992 survey line, starting at the western border, steadily veered south off the quarter line as it traveled east and ultimately crossed defendant's eastern border roughly 21 feet south of the quarter line. It is this "triangular area" between the quarter line and the 1992 survey line that is the subject of this action to quiet title.

At the bench trial, plaintiff Bernard Fisher testified that he witnessed the 1992 survey being performed, and that he believed that the survey line represented the boundary line between the two properties, although he also testified that he believed the 1992 survey was consistent with an earlier survey of the property performed in 1978. Further, he testified that he had never had any issues with defendant's predecessor in title, Randall Cramer, now deceased, concerning the boundary line and testified that both parties knew where the line was.

-1-

Cheryl Slater, defendant's wife, testified that she had a conversation about the boundary line between the properties with plaintiff Linda Fisher, and that Linda "didn't know who owned what." Linda denied having had this conversation.

Jessie Mitchell, who performed the 2013 survey, testified that the 1978 survey and the 1992 survey did not reflect identical boundary lines between the properties. Further, Mitchell testified that the boundary line was not visually apparent, other than by metal surveyor's stakes set below the ground. Mitchell also testified that a ditch on plaintiff's property encroached slightly onto defendant's property as surveyed in 2013. Plaintiff's counsel conceded that the surveys prior to 2013 "probably weren't correct," but stated that "if everybody accepts those as the boundary line and does so for a considerable period of time . . . then we're going to respect that even if it's wrong."

The trial court issued an opinion and order following the bench trial awarding plaintiffs title to the disputed area on the basis of acquiescence. The Court summarized its findings as follows:

> The Court finds there was a mistaken belief as to the location of the property line when the Ayres survey was performed on behalf of the predecessors in title to the lots in this case. Plaintiffs had relied upon the location of the property line as represented in the survey in placing the private driveway and ditch, with some additional wooded property as a buffer, on which trees were planted. There was no objection to Plaintiff's [sic] activities by Defendant's predecessor in title, nor an objection to the encroachment of the ditch over the boundary line as the 2013 survey would have located the properties. The court does not believe it was the intention of the parties to have the road run adjacent to the property line, with a slight encroachment onto Defendant's property, and also to have all of the wooded buffer area on Defendant's property. The Court finds the parties have utilized the wooded section as their buffer by the actions of their neighbors and unfortunately for this case they did not use an actual fence on the boundary line.
>
> Accordingly, the Court finds by a preponderance of the evidence there was a mistaken belief as to the location of the property line consistent with the Ayres survey, and it had existed for more than the statutorily required limitation period of 15 years. . . .

The court did not find that plaintiffs had suffered any damages and ordered that the legal descriptions of the parties' properties be modified to conform to the 1992 survey. The court entered a judgment of quiet title to that effect on January 26, 2015, and denied defendant's motion for a new trial or amendment to the judgment on February 27, 2015. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's findings of fact following a bench trial and review de novo its conclusions of law. *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "The clear error standard provides that factual findings are clearly erroneous

where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

## III. ANALYSIS

Defendant argues that there was insufficient evidence to support the trial court's finding that there was a mistaken belief regarding the location of the property line for 15 years. We agree.

"[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Mason v City of Menominee*, 282 Mich App 525, 530-531; 766 NW2d 888 (2009) (internal quotation marks, citation, and emphasis omitted). The three theories of acquiescence include: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). At issue here is the first theory. A claim of acquiescence for the statutory period requires a showing that the parties treated the mistaken line as the property line for 15 years. *Walters v Snyder*, 225 Mich App 219, 224; 570 NW2d 301 (1997). "The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). A unilateral mistake regarding the property line is insufficient to apply the doctrine of acquiescence. *McGee v Eriksek*, 51 Mich App 551, 557; 215 NW2d 571 (1974).

The trial court found "by a preponderance of the evidence there was a mistaken belief as to the location of the property line consistent with the [1992] survey, and it had existed for more than the statutorily required limitation of 15 years." Because defendant acquired his parcel in 2010 and the complaint was filed in 2013, the court necessarily had to find that defendant's predecessor in interest, Cramer, treated the 1992 survey line as the boundary for at least roughly 12 years.

In support of its ruling, the trial court found that plaintiffs had relied on the 1992 survey in constructing their driveway and its ditch, the latter of which slightly encroached onto defendant's property line according to the 2013 survey, and in planting trees in the disputed area. The court then noted that defendant's predecessor in title, presumably referring to Cramer, did not object to these activities. However, the record strongly suggests that plaintiffs constructed their driveway before 1992 and in reliance on the survey that was performed in 1978.[1]

---

[1] Plaintiffs purchased a parcel in 1978 that was adjacent to the parcel they had purchased in 1991. Bernard testified that pursuant to a consent judgment entered in 1979, plaintiffs possessed an easement over the parcel that they eventually purchased in 1991, and that subsequent to the judgment they built the driveway and had ditches dug alongside it. In fact, Bernard specifically testified that this occurred before he acquired "other property" although he did not explicitly say that this other property was the parcel they acquired in 1991. However, his testimony that the driveway was built while plaintiffs possessed an easement, rather than while they owned the

-3-

Therefore, the driveway and the ditch likely were in place when Cramer purchased his parcel in 1992, and ascribing any evidentiary value to his failure to object to the ditch's slight encroachment onto his property is questionable. In any event, Cramer's alleged failure to object to the location of the driveway and ditch is not evidence that he acquiesced to a boundary line roughly 20 feet south of that encroachment.

Moreover, although there was testimony showing that plaintiffs had planted trees and bushes in the disputed area, there was no definitive testimony regarding when the planting had occurred. Bernard stated that he had "tended" to pine trees in the disputed area "for five or six years" before defendant allegedly cut them down. But even assuming that defendant cut the trees down when he bought the parcel in 2010, the earliest that plaintiffs planted the trees, according to the testimony, was around 2004. And further assuming that the tree planting is evidence that Cramer treated the 1992 survey line as the property line, it only shows acquiescence for six years, nine years short of the required statutory period.

Ostensibly, the most compelling evidence in support of finding acquiescence in this case was the incorporation of the 1992 survey's property line description into Cramer's and defendant's deeds. However, the deeds themselves provide no evidence regarding how Cramer treated the 1992 survey line. Likewise, Bernard's testimony that he and Cramer never had a dispute about the property line is not evidence that Cramer treated the 1992 survey line as the correct boundary. In fact Bernard's own testimony indicates that he considered the 1992 survey line as consistent with the 1978 survey line, when in fact it was not.

In sum, the record does not demonstrate that the parties and their predecessors, although perhaps unconcerned about exactly where the boundary line fell and thus seeing no need to dispute the issue, had a mutual mistaken belief that the 1992 survey's boundary line was the correct boundary between the properties, at least for the fifteen-year statutory period. Although we reject defendant's argument that a finding of acquiescence as a matter of law requires a visible boundary line, see *Pyne v Elliott*, 53 Mich App 419; 220 NW2d 54 (1974), here, the trial court's finding that there was a mutual mistaken belief regarding the property line for 15 years lacked evidentiary support and was clearly erroneous.

Reversed and remanded for dismissal of plaintiffs' acquiescence claim.[2] We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Mark T. Boonstra

---

property outright, provides strong support for the inference that the driveway was built prior to 1991.

[2] Plaintiffs do not challenge the trial court's grant of a directed verdict to defendant regarding their claim of adverse possession, and we do not disturb that ruling on appeal.